IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TAMERA NICOLE KING,[1]

    Plaintiff,

v.                                          CASE NO. 4:14-cv-638-RH-GRJ

JAMIE MEJIA, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff, a federal prisoner proceeding *pro se*, has initiated this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). This case is presently before the Court on Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment. (ECF No. 26.) Plaintiff has filed a response in opposition to the motion (ECF No. 28) and this matter is, therefore, ripe for review. For the reasons that follow, the undersigned recommends that Defendants' motion for summary judgment be granted.

**I. INTRODUCTION**

Defendants, Jamie Mejia("Mejia"), a mid-level practitioner, and Durwood

---

[1] There are two discrepancies between Plaintiff's Complaint and the summary judgment evidence regarding the names of Plaintiff and Defendant Mejia. Plaintiff's Complaint lists her name as Tamera King and the Defendant as Jamie Mejia. The summary judgment evidence lists Plaintiff as Tameia King and Defendant as Jaime Mejia. For purposes of consistency, this Report and Recommendation will use Plaintiff's spellings: Tamera King and Jamie Mejia.

Gandee, M.D. ("Dr. Gandee"), a medical doctor—both of whom are medical providers at FCI Tallahassee—request the Court to dismiss this action, arguing that Plaintiff failed to allege sufficient facts that plausibly show that Defendants violated Plaintiff's Eighth Amendment rights. Defendants, alternatively, request the Court to enter summary judgment in their favor because the evidence filed by Defendants in support of the motion demonstrates that there is no merit to Plaintiff's Eighth Amendment claim.

Because Defendants' motion relies upon matters outside of the pleadings, the Court issued a summary judgment notice on July 21, 2015 advising Plaintiff that the Court will consider the matter as a summary judgment motion and advising Plaintiff that she was required to file any supporting evidentiary materials within 30 days. ECF No. 27. Although Plaintiff has not filed any opposing affidavits or other evidentiary materials, Plaintiff filed a timely response to the motion for summary judgment. ECF No. 28. Because Plaintiff's response is submitted under penalty of perjury, the response constitutes evidentiary material which the Court may consider in resolving the motion.

Plaintiff's claims center around the medical treatment she received for pain in her right hand, arm and knee at FCI Tallahassee. In Plaintiff's First Amended Complaint she names Mejia and Dr. Gandee as the only defendants.[2] Analysis of the sufficiency

---

[2] In Plaintiff's original complaint she named as defendants the Warden and two doctors, who provided treatment at private hospitals. Because the private doctors were not employed by the prison, but performed medical services at a private hospital, the Court advised Plaintiff that she could not bring *Bivens* claims against these doctors. Plaintiff also was instructed to amend to remove the Warden as a defendant because there were no allegations in this case that the Warden had any involvement, whatsoever, in Plaintiff's medical treatment, other than not responding to Plaintiff's emails complaining about her medical treatment.

of Plaintiff's claims requires the Court to focus upon the nature of the claims Plaintiff has brought and against whom the claims have been directed. Plaintiff's claims are properly viewed as Eighth Amendment deliberate indifference claims related to the conduct only of Mejia and Dr. Gandee. To be sure Plaintiff's claims are not medical negligence claims under the Federal Tort Claims Act. Thus, the issue before the Court is not whether the totality of the medical treatment provided to Plaintiff at FCI Tallahassee was consistent with the standard of care for medical practitioners in the community (or even whether the medical care she received could have been better) but rather whether Mejia and Dr. Gandee were deliberatively indifferent to Plaintiff's known medical conditions. Although the evidence before the Court suggests that the care Plaintiff received could have been better or different, the evidence does not show that Mejia or Dr. Gandee were deliberatively indifferent to Plaintiff's medical needs.

## II. SUMMARY JUDGMENT MOTION AND EVIDENCE

The Defendants filed a declaration of Angel Ortiz, M.D., the acting Regional Director of Medical Services for the Southeast Region of the BOP. ECF No. 26-5. Dr. Ortiz attaches to his declaration various medical records, documenting the treatment Plaintiff received at FCI Tallahassee.

Plaintiff filed a sworn response to the motion for summary judgment, detailing the treatment she received by date. ECF No. 28. In resolving the motion the Court must view the evidence in the light most favorable to the Plaintiff. The Court therefore must view the evidence submitted by the parties in tandem with an eye towards whether there are any disputed material issues of fact. Other than Plaintiff's chronology begins

on October 30, 2011, and Defendant's discussion of Plaintiff's treatment does not begin until January 18, 2012, and that Plaintiff says Defendants refused to provide physical therapy by an independent licensed physical therapist, there are no other material disagreements as to the treatment history. The record before the Court therefore discloses the following treatment history.

Plaintiff avers that she first sought medical attention for her hand on October 30, 2011, and the examining nurse told her to see the physician assistant— Defendant Mejia— the next morning. ECF No. 28, p. 1.  Mejia examined Plaintiff's hand on October 31, 2011 and told her that he was unsure of the problem. *Id.*  Because Mejia could not determine the nature of the medical issue, Meijia referred Plaintiff to Dr. Carbonell. *Id.* The appointment was scheduled for December 15, 2011 thus resulting n Plaintiff waiting 45 days for treatment by a medical doctor. *Id.*  While Plaintiff alleges that she was in pain during the time period she was waiting to see Dr. Carbonell, Plaintiff does not offer any evidence suggesting that Mejia was responsible for the delay in scheduling the appointment or that Plaintiff's condition constituted a medical emergency, which required immediate treatment.

Plaintiff then says that "neither doctor [gave] her a diagnosis" and that she only was given a lower bunk pass and a convalescence pass.[3] The Court interprets this statement to mean that Dr. Carbonell examined Plaintiff but was unable to provide a

---

[3] Although neither party provides an exact description of a convalescence pass, the records submitted by Defendants suggest that a convalescence pass allows an inmate not to report for work duties at the prison, while recovering from a medical issue.

*Case No: 4:14-cv-638-RH-GRJ*

diagnosis at the time of examination. The treatment prescribed by Dr. Carbonell, and not Mejia, was the lower bunk pass and the convalescence pass. Without specifying what Dr. Carbonell should have done, Plaintiff complains that she should have received something more than a lower bunk pass and a convalescence pass.

The declaration of Dr. Ortiz, further documents that Plaintiff arrived at the Health Services Department at FCI Tallahassee on January 19, 2012 with a complaint of swelling and tenderness of the right hand. ECF No. 26-5, Attach. 1. Plaintiff told Mejia, the medical provider, that she has had "persistent swelling and tenderness of the right hand for the last 3 month's." *Id.* The record of the medical examination conducted on January 19, 2012 on Plaintiff's wrist/hand/fingers discloses that the examination was normal. Plaintiff had a full range of motion, and there was no crepitus, clicking, popping or trauma observed. Other than noting some mild swelling and tenderness in the thenar area of Plaintiff's right hand, the exam was normal. *Id.* The treatment record from the January 19, 2012 visit describes the assessment of Plaintiff's medical condition as "Pes anserinus tendinitis or bursitis" and categorized the medical issue as "temporary/acute." *Id.*

Plaintiff's treatment records next disclose that she was examined again on February 27, 2012 by Mejia for right hand swelling. ECF No. 26-5, Attach. 2. Because Plaintiff continued to complain of right hand swelling, Mejia ordered x-rays of Plaintiff's hand noting as the reason for the x-ray "a history of chronic thenar area swelling with no history of trauma." *Id.* Mejia directed that the x-rays should be performed no later than March 1, 2012, and that the x-rays were a "routine" priority.

On April 12, 2012 Plaintiff was again examined by Mejia because Plaintiff continued to complain about swelling of the right hand.  ECF No. 26-5, Attach. 3. Mejia noted in the treatment records that the swelling in Plaintiff's right hand had decreased. *Id.* The treatment record from the April 12, 2012 examination also discloses that after Mejia consulted with a medical doctor the prescribed treatment was to "prolong convalescence" and order labs to rule out rheumatoid arthritis. *Id.*

Plaintiff returned to health services on June 11, 2012 for continued complaints of right hand swelling. ECF No. 26-5, Attach. 4. The treatment notes disclose that the provider was Antonio Pino, MD and include a diagnosis of "chronic swelling of unknown origin." *Id.* The medical staff confirmed that Plaintiff's x-ray was normal and the lab results were negative for rheumatoid arthritis. *Id.* Plaintiff was prescribed Naproxen for the swelling and pain.

Plaintiff returned to health services on June 20, 2012 complaining of right hand swelling. ECF No. 26-5, Attach. 5. The treatment record from this visit confirms that the x-ray was negative and notes that Plaintiff said the inflammation had decreased significantly. *Id.* Plaintiff was prescribed methlprednisolone. The notes of the examination by Ivan Negron MD show that there was no joint deformity, thenar atrophy, hypothenar atrophy or tenderness. Further, the tests performed on Plaintiff's wrist/hand/fingers showed that Plaintiff had thumb flexion, thumb extension, thumb opposition, thumb adduction and thumb abduction. The median motor nerve, median sensory nerve, radial motor nerve, radial sensory nerve, ulna motor nerve, and the ulnar sensory nerve were all intact. *Id.*

Plaintiff next sought treatment on September 7, 2012 and was examined by Cindy West, PA-C.  ECF No. 26-5. Attach. 6. The treatment note discloses that Plaintiff complained of a swollen hand and knee. The swelling in Plaintiff's right hand had gotten better, but it swelled again about three days before the examination. Plaintiff was provided with crutches and advised to ice her knee. She was prescribed NSAID's for the swelling but refused the prescription. *Id.*

Plaintiff returned three days later on September 10, 2012 and was examined by Mejia. ECF 26-5, Attach. 7. The treatment note discloses the following result of the examination of Plaintiff's wrist/hand/fingers. Plaintiff had a full range of motion but swelling and tenderness was noted in the right hand. *Id.* The examination of Plaintiff's knee disclosed that she had a full range of motion and other than mild bilateral tibia swelling, there was no crepitus, clicking, popping or locking noted. Plaintiff left the examination walking normally and returned the crutches she had been provided three days before this appointment.

At this point, Plaintiff had received conservative and appropriate treatment for the swelling in her right hand. And although staff at health services had performed x-rays and lab tests to determine the cause of the swelling all tests and x-rays were negative. Plaintiff was prescribed anti-inflammatories and directed to rest and convalesce use of her hand.

An event then occurred on October 6, 2012. Plaintiff was taken to health services on that day complaining of unbearable pain in her right arm. ECF No. 26-5, Attach. 8. While Plaintiff was throwing a shot put in the recreation yard, she felt a pop in

her upper right arm, which caused acute pain in her right humerus. Plaintiff was examined and it was determined that she had a possible fracture of the humerus. *Id.* Plaintiff was provided with a vacuum splint to the right arm and was then transported to a local hospital for further treatment.

Plaintiff did not have surgery on October 6, 2012 because the local hospital did not have an on-call surgeon. Consequently, on October 7, 2012 she was returned to health services at FCI Tallahassee, where she was prescribed pain medications and a consultation for surgery was ordered. ECF No. 26-5, Attachs. 9 & 10. Plaintiff was then examined at an outside orthopedic clinic on October 9, 2012 and an order to schedule surgery as soon as possible was entered. ECF No. 26-5, Attach. 11.

On October 12, 2012 Plaintiff underwent surgery at an outside hospital to repair her fractured right arm. ECF No. 26-5, Attach. 13. On October 15, 2012 Plaintiff returned from the local hospital following her surgery. ECF No. 26-5, Attach. 15. Plaintiff was counseled on wound care and was prescribed pain killers.

Plaintiff's follow-up appointment after her surgery with her orthopedist was conducted on October 30, 2012. ECF No. 26-5, Attach. 16. The sutures were removed and Plaintiff was prescribed Flexeril. She also was instructed to perform range of motion exercises. *Id.*

Plaintiff was then examined at health services on November 2, 2012. ECF No. 26-5, Attach. 17. During this visit it was determined that Plaintiff should have new x-rays before her next visit to the orthopedic specialist. *Id.* Plaintiff returned on November 20, 2012 and was sent to Tallahassee Orthopedic Clinic for a six week follow-up

appointment. ECF No. 26-5, Attach. 18. Plaintiff was referred to a hand specialist to address her continuing complaints about pain in her right hand. *Id.*

Plaintiff returned to health services on December 12, 2012 with continued complaints of pain in her right humerus. ECF No. 26-5, Attach. 19. X-rays were normal. Because Plaintiff could not flex her right arm (where she had surgery) past 90 degrees, Dr. Gandee noted that he would try to get a physical therapy consult. *Id.* Consequently, on December 19, 2012 Dr. Gandee, acting in the role of Institution Clinical Director referred a request to the BOP's Utilization Review Committee for an outside physical therapy consult. ECF No. 26-5, Attach. 20. On January 3, 2013 the Utilization Review Committee disapproved the request for outside physical therapy and instead directed that in-house physical therapy be provided to Plaintiff. *Id.*

On January 15, 2013 Plaintiff reported to health services. The treatment note from that visit discloses that Plaintiff reported her right arm was doing better, although it continued to hurt on cold days. ECF No. 26-5, Attach. 21. Dr. Gandee renewed Plaintiff's work convalescence pass and extended her lower bunk pass. *Id.*

Plaintiff was next examined on January 29, 2013. ECF No. 26-5, Attach. 22. Plaintiff was personally instructed on the type of exercises she should use and how often she needed to do the exercises to improve her condition and to prevent her from developing a frozen joint. *Id.*

Plaintiff says that her situation has become a chronic care issue and Defendant Mejia put Plaintiff's body in serious danger. Plaintiff claims that despite never receiving a diagnosis, she was prescribed medication, and her right arm may have been

weakened by the steroid pills and steroid shot.  She states that her arm has been broken for two years, her hand and arm have been left untreated, and her pain, inflammation, and joint problems still exist.  Plaintiff contends that the doctor and surgeon that performed her surgery stated that therapy was crucial for her recovery to gain full range of motion and use of her right arm, but she was denied therapy.

Plaintiff states that Defendant Dr. Gandee, her chronic care doctor, was aware of her pain, swelling, inflammation, muscle spasms, and decreased range of motion, but refused to do anything.

Plaintiff further argues that due to the denial of outside physical therapy, she is limited in her daily activities and has decreased mobility in her right hand and arm.  She claims that she is right handed and had to learn to use her left hand.  She further states that she fears using her right arm at its full capacity in case she re-injures it.  She states that she has a distal locking plate with locking screws in her right arm for fixation, which causes her pain.

Plaintiff claims that she was deprived of adequate medical care in violation of her Eighth Amendment rights.  She seeks therapy and court costs or medical bills, in addition to monetary damages for pain and suffering.  (ECF No. 10 ¶¶ 5-8.)

### III.  STANDARD OF REVIEW

Because the Court has considered matters outside of the allegations in the amended complaint, the procedures relating to summary judgment apply. In accordance with Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.) As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005.)

     In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV. DISCUSSION

Plaintiff's claims that Defendants Mejia and Dr. Gandee were deliberately indifferent to her medical needs in violation of the Eighth Amendment.

The law relating to an Eighth Amendment deliberate indifference claim is fairly straightforward.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.  "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  To establish the second element, deliberate indifference to the serious medical need, the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) (explaining that the plaintiff must show that the defendant was "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference").

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s

*Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").  For the same reason, the fact that jail medical personnel did not refer a plaintiff to an outside physician does not provide a basis for Eighth Amendment liability.  *See Estelle* 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").

     Because Plaintiff's claim is directed only at Mejia and Dr. Gandee, she must show that Mejia and Dr. Gandee, (and not others) were deliberately indifferent to her medical issues and that their deliberate indifference was causally connected to her medical issues. Plaintiff's claims fail because she has not demonstrated that Mejia or Dr. Gandee were deliberatively indifferent to her medical needs or that their conduct (or lack thereof) was causally related to the medical issues she now claims she suffers regarding her right hand and arm.

     With regard to Mejia, the record discloses that he was not the medical provider

who actually treated Plaintiff during every visit and examination at health services. While Mejia was involved as a primary health provider, he is not a medical doctor and therefore was required to rely upon the advice and direction of medical doctors. The record reflects that Mejia did just that at every step of the way. For example, on October 31, 2012—the date Plaintiff says she was first examined by Mejia— because Mejia could not determine the cause of Plaintiff's pain and swelling in her right hand, Meija ordered a consultation with Dr. Carbonnell. While Plaintiff complains that she had to wait forty-five days for the appointment, there is no evidence (nor any allegation) that Mejia was responsible in any way for the delay in the appointment with Dr. Carbonell. Thus, any suggestion that Mejia was deliberately indifferent to Plaintiff's medical needs because she was forced to wait forty-five days for an appointment with a doctor has no evidentiary basis in the record.

Further, the medical records documenting the treatment Plaintiff received, demonstrate that throughout Plaintiff's period of care, Mejia consulted with other medical doctors regarding the cause of Plaintiff's problems with her right hand and that after these consultations ordered appropriate testing and treatment, including x-rays (twice) and laboratory tests. Plaintiff also was prescribed pain killers and instructions concerning rest, icing and other treatment regimes. And after a number of visits to diagnose Plaintiff's problems, Plaintiff was referred to a hand specialist.

The record then discloses without dispute that after Plaintiff fractured her right humerus on October 6, 2012 while throwing a shot put in the recreational area, Plaintiff received full attention and treatment for her injury. She was taken to a local hospital for

surgery and then was referred to an orthopedic specialist who performed surgery on October 12, 2012 to repair the fractured humerus. After the surgery Plaintiff was provided with full follow-up by the outside orthopedic specialist and was examined several times by BOP health services to monitor Plaintiff's recovery from the surgery.

Plaintiff's only complaint about the care she received after her surgery concerns her claim that Mejia and Dr. Gandee were deliberately indifferent to her medical care because they did not provide her with physical therapy by an outside licensed physical therapist and instead provided Plaintiff with in house physical therapy.

The problem with this claim is that neither Mejia nor Dr. Gandee refused or failed to take action to insure that Plaintiff was provided outside physical therapy. Rather, the record discloses that Dr. Gandee examined Plaintiff on December 12, 2012 and noted that he would attempt to obtain a physical therapy consult. Consistent with this note, on December 19, 2012 Dr. Gandee made a formal request to the BOP Utilization Review Committee to approve a physical therapy consult. On January 3, 2013 the Utilization Review Committee disapproved Dr. Gandee's request and instead directed that health services provide in house physical therapy. That is exactly what happened. Mejia, then, at the direction of the Utilization Review Committee, worked with Plaintiff to instruct her regarding the appropriate exercises to perform to insure that she recovered and did not develop a frozen joint. While physical therapy by a licensed physical therapist may have been the optimal and better medical course of treatment, neither the actions of Dr. Gandee nor the actions of Mejia can be viewed as deliberatively indifferent to Plaintiff's medical condition. Mejia was not involved in the decision to provide in house physical

therapy instead of physical therapy from an outside physical therapist. Consequently, Plaintiff's claim that Mejia was deliberatively indifferent to her medical condition in this regard has no support in the record. And because the record discloses that Dr. Gandee did not make the decision to provide in house physical therapy instead of physical therapy by an outside physical therapist, there is no support for the claim that Dr. Gandee was deliberately indifferent to Plaintiff's medical condition. The record demonstrates without dispute that both Dr. Gandee and Mejia recognized the importance of physical therapy and took appropriate action to attempt to obtain physical therapy for Plaintiff. Simply put, there is no dispute on this record that neither Dr. Gandee nor Mejia made the decision to provide in house physical therapy instead of physical therapy by an outside physical therapist. Therefore, Plaintiff's claim that Dr. Gandee or Mejia were deliberatively indifferent to her medical needs concerning her right arm has no merit.

In sum, it is evident from the record before the Court that Plaintiff received substantial medical treatment and attention for the pain in her right arm and hand and for treatment after she fractured her right humerus. The record discloses that Plaintiff was seen for medical treatment at least thirteen times between October 30, 2011 and September 11, 2012. The treating medical providers (including Mejia and Dr. Gandee) provided Plaintiff with pain medication, a steroid shot, x-rays, lab work, crutches, and convalescence at her various appointments. Mejia (and the other medical providers) explored appropriate medical action at each step of the way when they could not determine the cause of the swelling and pain in Plaintiff's right hand and arm. Mejia

referred Plaintiff to appropriate medical doctors and specialists when he could not diagnose the cause of Plaintiff's problems. After she fractured her humerus Plaintiff was provided with medical treatment by an outside orthopedic specialist, who successfully performed surgery to repair her fractured right humerus. Plaintiff was appropriately followed-up after her surgery, and other than not receiving outside physical therapy, there is nothing in the record to suggest that there was any shortcoming in the medical treatment she received.

While Plaintiff alleges that she is extremely unhappy with the course of treatment Mejia and Dr. Gandee provided she has failed to demonstrate that Defendants failed to treat her or ignored her medical issues. Plaintiff's disagreement with her medical treatment simply does not rise to the level of a constitutional violation. The Court cannot second guess medical decisions made by qualified professionals, particularly in a case, like this one, where it is undisputed that Plaintiff received on-going medical treatment for her complaints of pain in her arm and hand.

Accordingly, Defendants Mejia and Gandee's are entitled to summary judgment in their favor with regard to Plaintiff's claims that they were deliberately indifferent to Plaintiff's serious medical needs.

## V. CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' Alternative Motion for Summary Judgment (ECF No. 26) should be **GRANTED** and judgment should be entered in favor of Defendants.

**IN CHAMBERS**, at Gainesville, Florida, this 28th day of September 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.